UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80166-CR-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA

v.

ALLEN MARK LEVINSON,

    Defendant.
_____/



FILED by _____ D.C.

JAN 3 1 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS *IN LIMINE* TO EXCLUDE FED. R. EVID. 414 EVIDENCE (DE 38) AND FED. R. EVID. 404(b) EVIDENCE (DE 28)

    Before this Court are Defendant's motions to exclude Fed R. Evidence 414 evidence (DE 38) and Fed. R. Evidence 404(b) evidence (DE 28). A hearing was held on January 14, 2011(DE 52).

    The defendant is charged in a two count Indictment with attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 1) and committing an enumerated felony offense involving a minor, as set forth in Count 1, while being required by law to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count 2). (DE 10).

    The Government alleged that in the instant case the Defendant revealed in computer chat sessions with an undercover officer posing as the step-father of an eight year old step-daughter that he had raped his own daughter by the time she was ten years old. The Defendant participated in a live web camera session wherein the Defendant exposed himself and attempted to view the undercover officer engaging in sexual activity with his fictitious step-daughter.

    The United States seeks to introduce evidence of the defendant's molestation of two (2) other minors to show his sexual interest in children and to prove his intent to commit the crimes with

which he is currently charged. The Government seeks to introduce the facts and circumstances surrounding the defendant's rape of his young daughter, and the facts and circumstances giving rise to the defendant's 1998 Illinois conviction for aggravated criminal sexual abuse. The following is a summary of the testimony that the United States seeks to introduce at trial:

**A. Robin Halpern**

The United States seeks to introduce the testimony of the defendant's daughter, Robin Halpern. According to the Government, she will testify to the following: When she was 3 or 4 years old, she, her brother, and her parents lived in an apartment in Skokie, Illinois. Her earliest relevant memory is of her father, the defendant, taking her into his bedroom, doing something to her, and then telling her that it was private. He told her that such acts were between "dads and daughters." He also told her that if she told anyone, no one would believe her and she would be taken away from the family.

When Robin was 5 years old, the family moved to Highland Park, Illinois. They had a much larger home and the defendant was more brazen about the abuse. According to Robin, the defendant began raping her when she was just 5 or 6 years old. He would come into her bedroom at night to do so. He repeatedly told her that if she told anyone, she would be taken away from the family. Robin also recalls that the defendant bought her many material things, presumably in an effort to buy her silence.

The defendant continued to rape Robin for the next several years. Robin's mother actually walked in on the defendant raping Robin. Mrs. Levinson left the room and never tried to help Robin. Knowing that her mother knew about the abuse and did nothing to help her, Robin continued to keep quiet. When she was approximately 10 years old, the defendant told Robin that he had gotten a

2

vasectomy so that he would not impregnate her.

When Robin was approximately 12 years old, the family moved to a larger home in Highland Park. Robin began to lock her bedroom door in an effort to keep the defendant from abusing her. Her efforts did not work. The defendant continued to rape her, and he continued to buy her anything she wanted to try to keep her quiet.

When she was approximately 13-14 years old, approximately 35 years ago, Robin finally found the courage to stand up to the defendant. She told him that if he touched her, she would scream and call the police. The abuse finally ended when Robin found the courage to stand up to the defendant.

As she grew older, Robin had very little contact with the defendant or her mother. Robin never told anyone about the abuse until she met her husband, Guy Halpern. Guy encouraged Robin to call the police. Robin chose not to do so.

Following the defendant's arrest in 1997, the police contacted Robin. For the first time, Robin realized that she was not the defendant's only victim. She confirmed to police that the defendant had sexually abused her as a child.

Robin was asked whether the defendant's statements to the undercover officer in this case regarding her abuse were true. Robin said that the defendant raped her when she was 6-7 years old, not 10 years old. Robin said that the abuse occurred "quite often." Robin said the defendant told her this was something that fathers and daughters did together.

**B. Sgt. Rich Benbow**

Second, the United States seeks to introduce the testimony of Sgt. Rich Benbow of the Wheeling Police Department in Wheeling, Illinois. Sgt. Benbow investigated the allegations

stemming from an October 29, 1997 incident wherein the defendant and a 7 year old female were alone together in the elevator of an apartment complex. When the elevator door closed, the defendant pushed the 7 year old child into a corner. He took her hand and placed it underneath his swim suit at his penis. He then took out a $5 bill, gave it to the child and told her not to tell anyone. The child left the elevator and immediately told a family member what happened. Police responded and questioned the defendant.

Sgt. Benbow took the defendant's post-*Miranda* statement. The defendant initially stated that this incident was a "misunderstanding between (him) and the little black girl's mother." The defendant said that he is a nice guy who always gives needy children in his apartment building money to buy food. The defendant said he gave the child money to buy food, and nothing more happened.

Upon further questioning, the defendant changed his story and said that he was in the elevator with the child. He said that he told the child, "you're a very nice little girl." He said that he and the child were rubbing up against each other in the elevator. He said he held the child's arm and the back of her hand rubbed against his penis over his swim suit. He said the child's hand was on his penis for no more than 5 seconds. The defendant admitted that he gave the child a $5 bill and told her, "this is just between you and me." The defendant clarified, "I didn't touch her, she touched me....it was kind of a mutual thing." When asked why he did this, the defendant said, "I was stupid... I thought it might be fun, it wasn't fun."

**C. Guy Halpern**

According to the Government, the defendant later spoke to his daughter, Robin Halpern, and his son-in-law, Guy Halpern, about the 1997 incident. The defendant admitted to Guy Halpern that

he had in fact committed the sex offense. The defendant admitted to Guy that he (the defendant) was sick and would be getting treatment. The defendant told Guy that 99% of the time he (the defendant) was capable of controlling his urges, but 1% of the time, the urges took over.

### Fed. R. Evid. 414

Pursuant to Fed. R. Evid. 414(a), "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." The Rule defines "child" as a person under 14 years of age, and the definition of "molestation" includes "any conduct proscribed by chapter 110 of title 18, United States Code." Fed. R. Evid. 414(d)(2).

Section 2260A falls within chapter 110 of Title 18, United States Code; accordingly, it is an offense of "child molestation" for purposes of Rule 414.

Pursuant to Rule 414, evidence of other offenses of child molestation are admissible to prove the defendant's guilt, and may be considered on any issue to which the evidence is relevant. The defendant need not have been charged or convicted of the prior offense in order for it to be admissible; instead, the Court must determine whether a reasonable jury could conclude that the defendant committed a prior child molestation offense. *Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 151-152, 154-55 (3d Cir. 2002). *See also United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998).

"Evidence admissible under Rule 414 must also meet the requirements of other provisions of the Federal Rules of Evidence, including Rule 403." *United States v. Carino*, 368 Fed.Appx. 929 (11th Cir. 2010). "With respect to the Rule 403 balancing, however, the sponsors [of Rule 414]

5

stated that '[t]he presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice.'" *United States v. Larson*, 112 F.3d 600, 605 (2d Cir.1997) (citations omitted). "In applying the Rule 403 balancing test to prior offenses admissible under Rule 414, a district court should consider a number of factors, including (i) the similarity between the previous offense and the charged crime, (ii) the temporal proximity between the two crimes, (iii) the frequency of the prior acts, (iv) the presence or absence of any intervening acts, and (v) the reliability of the evidence of the past offense." *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir.2007).

Regarding the similarity between the offenses, they all were very similar. The criminal acts involving the Defendant's daughter were virtually identical to the instant offense in that they both involved sexual molestation of a daughter at about the same age. The similarity is highlighted by the fact that the Defendant confessed to his rape of his daughter in the process of attempting to get the undercover officer to do the same to his fictitious step-daughter. The 1997 offense was also very similar in that it involved the molestation of a young child of about the same age as the fictitious step-daughter.

While the prior crimes were not close in time, "[t]he legislative history of Rule 414 reveals that Congress meant its temporal scope to be broad, allowing the court to admit evidence of Rule 414 acts that occurred more than 20 years before trial..." *Larson*, 112 F.3d at 605. Remoteness in time, especially when the prior crime was substantially similar, does not render the conviction inadmissible. *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir.1997) (similarity of prior acts 25-29 years before trial outweighed concerns of remoteness in time). *See also United States v. Carino*, 368 Fed.Appx. 929 (11th Cir. 2010) (evidence of molestation 32 years before trial properly

admitted).

It is unclear exactly how frequent the prior acts were. The Defendant's alleged abuse of his daughter apparently occurred frequently over a ten year period between 35-45 years ago. The 1997 crime was a single incident. The Defendant asserted in his computer sessions with the undercover officer that he has been with all three of his granddaughters already. The defendant told Guy Halpern that 99% of the time he (the defendant) was capable of controlling his urges, but 1% of the time, the urges took over. Considering all of this evidence, it appears that the frequency of the prior acts argues in favor of their admission.

Although the Defendant apparently admitted to Guy Halpern that he was sick and would seek treatment, there is no other evidence that he did obtain treatment. Thus there apparently is no intervening act that would argue against admission of the prior acts.

The evidence of the prior acts is very reliable. The Defendant was convicted of the 1997 crime. In addition to the testimony of the Defendant's daughter, the Defendant admitted to Guy Halpern that he was sick, could not always control his urges and needed treatment.

Since the prior acts were substantially similar and the evidence of the acts is very reliable, this Court RECOMMENDS that they be ADMITTED under Rule 414.

### Fed. R. Evid. 404(b)

Federal Rule of Evidence 404(b) "is a rule of inclusion, and ... accordingly 404(b) evidence, like other relevant evidence, should not be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir.2003) (internal citations and quotations omitted). The rule states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person

in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

To be admissible: (1) Rule 404(b) evidence must be relevant to an issue other than the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and it must satisfy Rule 403. *Jernigan*, 341 F.3d at 1280.

Regarding the first prong, similarity of extrinsic acts to the offenses with which the defendant is charged is the standard by which relevancy is measured under 404(b). *United States v. Williams*, 816 F.2d 1527, 1531 (11th Cir.1987). Since the prior acts and the charged offense are substantially similar it is highly relevant on the issue of intent.

In relation to the second prong, as noted above the Government's proof of the prior acts is very reliable, so a jury could determine that the Defendant committed the prior acts.

Regarding the third prong, the Eleventh Circuit has stated, "the probative value of the evidence must not be *substantially outweighed* by unfair prejudice.... [T]his determination lies within the sound discretion of the district judge and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Jernigan*, 341 F.3d at 1282 (internal citations and quotations omitted) (emphasis in original). Since the Government bears the burden of proving that the Defendant intended to entice a victim and was not merely fantasizing, evidence of the prior acts is critical to the Government's case. Even thought the prior acts were temporally remote, they were substantially similar. Moreover, since the jury will

8


already learn that the Defendant is a registered sex offender, the additional prejudice from admission of the prior acts will be incrementally less. Thus, the probative value of the evidence is not substantially outweighed by unfair prejudice.

For the foregoing reasons, this Court also RECOMMENDS that evidence of the prior acts also be ADMITTED under Rule 404(b).

## CONCLUSION

In light of the foregoing, this Court **RECOMMENDS** that the District Court **DENY** the Defendant's motions to exclude Fed R. Evidence 414 evidence (DE 38) and Fed. R. Evidence 404(b) evidence (DE 28).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth L. Ryskamp, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND RECOMMENDED** in Chambers this 31 day of January, 2011 at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:

Senior United States District Judge Kenneth L. Ryskamp

Counsel of Record