UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80166-CR-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA

v.

ALLEN MARK LEVINSON,

Defendant.
_____/

FILED by ___ D.C.

MAR 17 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

REPORT AND RECOMMENDATION ON GOVERNMENT'S MOTION *IN LIMINE* TO
EXCLUDE EXPERT TESTIMONY (DE 54)

Before this Court is the Government's motion to exclude expert testimony (DE 54), Defendant's response (DE 59), and the Government's reply (DE 60). A hearing was held on February 3, 2011. The Defendant and the Government submitted post-hearing summations (DEs 75, 79).

The defendant is charged in a two count Indictment with attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 1) and committing an enumerated felony offense involving a minor, as set forth in Count 1, while being required by law to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count 2). (DE 10).

The Government alleges that the Defendant engaged in computer chat sessions and a live web camera session with an undercover officer posing as the step-father of an eight year old step-daughter wherein the Defendant exposed himself and attempted to view the undercover officer engaging in sexual activity with his fictitious step-daughter.

The Defendant seeks to have Dr. Marty Klein, a California licensed marriage and family therapist and an AASECT certified sex therapist, testify that "[s]exual role-playing--or fantasy-based

erotic relationship–is extremely common" and that the Defendant's chatlogs "are completely consistent with fantasy role-playing." (DE 65, at 4, 6).

Dr. Klein testified at the *Daubert* hearing that he has a bachelor's degree in sociology from the State University in New York, a master's degree in sociology from Indiana University, a master's degree in clinical psychology from the Fielding Institute, and a doctorate in human sexuality from the Institute for Advanced Study of Human Sexuality, certified by the State of California to provide doctoral degrees but not an accredited school. (DE 73 at 41, 64). He has been a California licensed marriage and family therapist since 1980, and certified by the American Association of Sex Educators, Counselors, and Therapists as a sex therapist. (DE 73 at 42). He has been a licensed psychotherapist for 31 years, is certified to provide continuing education for other psychotherapists and for other sex therapists, and has lectured and consulted extensively on human sexuality, sex therapy and sex education programs. (DE 73 at 43-44). He has written six books on human sexuality. (DE 73 at 43). He has written several hundred articles, some of them peer-reviewed, and chapters on treating sexual disorders, clinical child psychology, and pornography. (DE 73 at 44). He has testified as an expert on sexual expression, sexual fantasy, pornography, fetishes, paraphilias, and sadomasochism. (DE 73 at 46). 2-15% of his clinical practice involves work with sex offenders. (DE 73 at 47). 5% of his practice involves people who are attracted to children. (DE 73 at 77). A substantial portion of his practice involves treatment and therapy sessions with patients that take part in role-playing in chat rooms. (DE 73 at 49).

Dr. Klein testified that there aren't many studies on role-playing and human sexuality, and he could not point to any peer review studies, but that everyone knows it is very, very common. (DE 73 at 51, 61). Dr. Klein testified about one study, that was not peer-reviewed, by Dr. Jack Morin in

2

the book The Erotic Mind where the author collected fantasies from over a thousand participants. (DE 73 at 52, 58, 61). Dr. Klein also testified that therapists discuss role-playing with patients a lot. (DE 73 at 53). Dr. Klein has reviewed patients' chats, mostly in the context of providing expert services to attorneys. (DE 73 at 54).

Dr. Klein concluded that the Defendant's chat logs that he examined "are completely consistent with fantasy role-playing. When adults are engaged in age-oriented role play, they produce transcripts that look very much like the ones [he] examined." (DE 73 at 55). Dr. Klein based his conclusion by comparing the Defendant's chats to other chat logs that he has seen and other conversations that he has had with patients. (DE 73 at 55). He admitted that he had probably previously seen approximately 15 chats that he would have been able to compare to the Defendant's chats. (DE 73 at 109).

He admitted that if someone had actually enacted the behavior previously that would affect his opinion as to whether they were merely fantasizing. (DE 73 at 92-93). Notwithstanding that, Dr. Klein was unfamiliar with the Defendant's prior conviction for aggravated sexual abuse and his arrest in Colorado in the summer of 2010. (DE 73 at 104, 106). He also did not interview the Defendant and did not review the forensic report, Defendant's medical history nor the Defendant's psychiatric history. (DE 73 at 102-03).

Dr. Klein also testified that the "fact" that the defendant did not solicit any actual child pornography made it more likely that he was just fantasy role-playing. (DE 73 at 55-56). Notwithstanding that, Dr. Klein admitted that the Defendant attempted to view web camera images of the undercover officer's eight year old daughter engaging in sexual activity with the undercover officer. (DE 73 at 112-14).

3

Dr. Klein also testified that participation in age-oriented role-playing fantasy in adult chat rooms is a substitute for sexual activity for many people. (DE 73 at 59). He based that conclusion on Dr. Morin's study, talking with other therapists, feedback during Dr. Klein's seminars, and email from the public. (DE 73 at 59).

He further testified that "[s]urveys consistently show that the most common sexual fantasies involve inappropriate partners often with activities that fantasizer would never do in real life." (DE 73 at 88). Dr. Klein based that statement mainly on surveys from MSNBC.com and magazines such as Red Book, Cosmopolitan, Playboy, as well as the Height and the Kennedy reports, and the Janice and the Chip Rose studies. (DE 73 at 89).

Dr. Klein was asked if it is acceptable within the clinical community for a patient to engage in the Defendant's "type of role-playing versus actually acting out" and he opined that "certainly engaging in fantasy role-playing would be seen by any reasonable person as preferable to offending with a child." (DE 73 at 56). Dr. Klein further testified that within the clinical community it was acceptable for sex offenders to engage in role-playing like in the Defendant's chats over the Internet. (DE 73 at 57). Dr. Klein testified that it was common based upon his conversations with other therapists and his own clinical experience. *Id.* Dr. Klein admitted that there is no scientific test to determine if a chat room participant is merely fantasizing. (DE 73 at 88). He testified that less than 3% of his practice is devoted to evaluating chat room behavior. (DE 73 at 87).

Dr. Klein testified that although he does not like the Diagnostic and Statistical Manual (DSM) usage of the term "pedophile," he diagnoses pedophiles through their self-reporting rather than through any testing. (DE 73 at 80-82).

ANALYSIS

FRE RULE 702

Federal Rule of Evidence Rule 702 provides that: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Rule 702, as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), requires expert scientific evidence to be both reliable and relevant pursuant to Rule 702. *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. Thus, the evidence must: (1) constitute scientific knowledge; and (2) assist the trier of fact to understand the evidence or to determine a fact at issue. *Id.* at 589-91, 113 S.Ct. 2786. The scientific knowledge question requires the trial court to consider the theory or technique upon which the testimony is based in light of at least five factors: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for that theory or technique; (4) the existence and maintenance of standards controlling the theory or technique's operation; and (5) whether the theory or technique has attained general acceptance within the relevant scientific community. *Id.* at 593-94, 113 S.Ct. 2786; *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir.1998).

In determining whether the evidence appropriately assists the trier of fact, Fed.R.Evid. 403 plays an important role in excluding overly prejudicial evidence, because "[e]xpert evidence can be

both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)); *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005).

"The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir.2007). This gatekeeping function is guided by the well-established principle that "[t]he proponent of the expert testimony carries a substantial burden under Rule 702" to show admissibility of that testimony by a preponderance of the evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir.2005); *see also Boca Raton Community Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir.2009) ("The offering party must show that the opinion meets the *Daubert* criteria, including reliable methodology and helpfulness to the factfinder ..., by a preponderance of the evidence.").

Admissible expert testimony is not confined to "true science." *See, e.g., United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The trial courts are also required to play the same gatekeeping function considering the admissibility of technical expert evidence."); *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) (" *Daubert* applies to all expert testimony, not just 'scientific' testimony...."). In assessing the reliability and relevancy of expert testimony the trial court must ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999). "[S]ome of Daubert's questions can help to evaluate the reliability even of

experience-based testimony. In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable. *Id.* at 151.

"[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir.2004); *see also Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.Supp.2d 1321, 2009 WL 4809877, *3 (S.D.Fla. Dec. 15, 2009) (qualification prong for expert testimony is "not stringent" in that "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility") (citations omitted).

"[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. ... [V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir.2003) (citations omitted).

To the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification. *See American General Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir.2009) ("Standards of scientific reliability, such as testability and peer review, do not apply

to all forms of expert testimony," and court has discretion to deem expert testimony reliable based upon personal knowledge or experience); *Maiz*, 253 F.3d at 665-66 (rejecting as unpersuasive defendants' argument that accounting expert's calculations of plaintiffs' losses were unreliable because he was unfamiliar with individual plaintiffs and adopted a damages theory that was "essentially unverifiable"). A district court may decide that nonscientific expert testimony is reliable based "upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999). However, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997).

Dr. Klein's proposed testimony that the Defendant's chatlogs "are completely consistent with fantasy role-playing" does not appear to be reliable according to the criteria discussed in *Daubert* and *Kumho Tire*. *See United States v. Friedlander*, 395 Fed.Appx. 577 (11th Cir. 2010 (testimony about the prevalence of "internet fantasy" was unreliable as it was not based on the DSM IV or quantifiable scientific methodology). The Defendant has failed to establish that his theories and techniques can be and have been tested, that they have been subjected to peer review, and what the known or potential rate of error is for the theories and techniques. He has pointed to no objective standards controlling his theories and techniques. He has not established that his theories and techniques have attained general acceptance within his area of expertise. *Gilliard*, 133 F.3d at 812. Indeed, the Defendant has offered no criteria by which he arrives at his conclusion that the chatlogs "are completely consistent with fantasy role-playing." We are left with only the slimmest reed to

assess his conclusion- that he has mentally compared (with little or no clue as to how the comparisons were drawn) the chatlogs to some 15 chatlogs that he has been exposed to previously in his practice. Moreover, he apparently did not even take into consideration any of the personal characteristics of the Defendant, such as his criminal history, his psychiatric or medical history, and he did not interview or test the Defendant. His opinion is connected to precious little data only by his *ipse dixit* and is not adequately supported. *See General Electric Co. v. Joiner*, 522 U.S. at 146; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d at 1107. His opinion is "essentially unverifiable." *Maiz*, 253 F.3d at 665-66.

Dr. Klein's proposed testimony that "[s]exual role-playing--or fantasy-based erotic relationship–is extremely common" is not based on any peer reviewed studies, rather he testified that it is common knowledge. (DE 65 at 4; DE 73 at 51, 61). As such it is not based upon reliable scientific or technical methodology and would not be helpful to the factfinder. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

### FRE 704(b)

Fed.R.Evid. 704(b) provides that: "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto."

In *United States v. Hofus*, 598 F.3d 1171, 1179-80 (9th Cir.2010), the Ninth Circuit concluded in a prosecution for attempting to coerce and entice a minor that expert opinion that defendant who sent text messages was only engaging in fantasy was precisely the question for the jury and was thus inadmissible under Rule 704(b). *Id.* The court also concluded that the testimony

9

would likely confuse the jury since the opinion that sexual texting with the victim was "'in fantasy alone' necessarily implies that Hofus lacked the intent to actually have sex with B.T., but does not make it more likely or not that he attempted to entice or persuade her to agree to an illegal sex act." *Hofus*, 598 F.3d at 1179.

As in *Hofus*, Dr. Klein's testimony that the Defendant was engaging in fantasy is a question for the jury, that is, whether the Defendant *knowingly* attempted to entice a minor to engage in sexual activity. *See also United States v. Shaffer*, 472 F.3d 1219 (10th Cir.2007) (evidence that based upon an exam of his hard drive defendant was on a general porn fishing expedition instead of seeking child porn went to his state of mind). As in *Hofus* and *Shaffer*, Dr. Klein's testimony should be excluded under Rule 704(b).

For the foregoing reasons, this Court RECOMMENDS that Dr. Klein's expert testimony be EXCLUDED.

## CONCLUSION

In light of the foregoing, this Court **RECOMMENDS** that the District Court **GRANT** the Government's motion to exclude expert testimony (DE 54).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth L. Ryskamp, Senior United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d

745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND RECOMMENDED** in Chambers this 17 day of March, 2011 at West Palm Beach in the Southern District of Florida.

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:

Senior United States District Judge Kenneth L. Ryskamp

Counsel of Record